## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ADVANTAGE MEDICAL ASSOCIATES, P.A., a New Jersey professional association, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | Case 3:2:24-cv-00441-RLS |
| v. | ) ) | |
| PARAGON PRIVATE HEALTH, LLC, | ) ) | |
| Defendant. | ) | |

## BRIEF IN SUPPORT OF
## <u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>

Michael J. Canning
Matthew N. Fiorovanti
GIORDANO, HALLERAN & CIESLA, P.C.
125 Half Mile Road, Suite 300
Red Bank, New Jersey 07701-6777
Tel: (732) 741-3900
MCanning@ghclaw.com
MFiorovanti@ghclaw.com

Phillip A. Bock (pro hac vice)
David M. Oppenheim (pro hac vice)
Bock Hatch & Oppenheim, LLC
203 N. La Salle St., Ste. 2100
Chicago, IL 60601
Tel: (312) 658-5501
Email: service@classlawyers.com

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS.................................................................................... 1

TABLE OF AUTHORITIES ............................................................................. 1

BRIEF IN SUPPORT ........................................................................................ 1

    I.     Background.......................................................................................... 1

    II.    Summary of the Settlement.................................................................. 2

    III.   The Settlement Class was notified about the settlement proposal.
         ......................................................................................................... 5

    IV.   The Court Should Finally Approve the Settlement. .............................. 6

        A.    Class Certification is Still Appropriate. ...................................... 6

        B.    Standard for Judicial Evaluation and Approval. ......................... 7

        C.    The Settlement Is Fair, Reasonable, and Adequate. ................... 8

            1.    Complexity, expense, and duration of the litigation. ........ 9

            2.    Class member reaction to the settlement proposal. .......... 9

            3.    The stage of the case and amount of discovery................ 10

            4.    The risks of establishing liability, damages, and maintaining a class through trial. ................................... 11

            5.    Defendant's ability to withstand a greater judgment. .... 12

            6.    Range of reasonableness of the settlement..................... 12

    V.    The Attorney's Fees and Expenses are Reasonable and Appropriate....................................................................................... 12

    VI.   The Agreed Service/Incentive Award to Plaintiff is Appropriate......... 18

    VII.  Conclusion. ..................................................................................... 20

CERTIFICATE OF E-FILING AND SERVICE ...................................................... 21

# TABLE OF AUTHORITIES

Page

## Cases

*Astro Cos., LLC v. WestFax Inc.*, 2025 WL 474931 (D. Col. Feb. 12, 2025).............. 11

*Blum v. Stenson*, 465 U.S. 886 (1984)........................................................................ 14

*Boeing Co. v. Van Gemert,* 444 U.S. 472 (1980)................................................... 14, 16

*Career Counseling, Inc. v. Amerifactors Fin. Grp., LLC*, 91 F.4th 202 (4th Cir. 2024)............................................................................................................................ 11

*Cook v. Niedert,* 142 F.3d 1004 (7th Cir. 1998) ........................................................ 19

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ........................................................ 9

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000) ............................. 18

*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010) ........................................ 7

*Evans v. Jeff D.*, 475 U.S. 717 (1986)........................................................................... 7

*Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560 (7th Cir. 1994) ....................... 14

*Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998)......................................................... 14

*Gene & Gene LLC v. Biopay LLC*, 541 F.3d 318 (5th Cir. 2008) ............................... 11

*Girsh v. Jepson*, 521 F.2d 153 (3rd Cir. 1975) ............................................................. 8

*Golan v. FreeEats.com*, 930 F.3d 950 (8th Cir. 2019)................................................. 11

*Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*, 29 F.4th 839 (7th Cir. 2022)............. 11

*Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094 (11th Cir. 2019) ................ 11

*Grier v. Chase Manhattan Automotive Finance Co.*, 2000 U.S. Dist. LEXIS 1339 (E.D. Pa. 2000) ................................................................................................. 13

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ............................................................... 17

*Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F. Supp. 1130 (N.D. Ill. 1997) ........................................................................................ 10

*In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 163 (S.D.N.Y. 2000) ............................................................................................................ 10

*In re Automotive Refinishing Paint Antitrust Litig.*, 2008 WL 63269 (E.D. Pa. Jan. 3, 2008)................................................................................................................. 17

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993)............ 9

*In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990) .......................................................................................................... 19

*In Re Greenwich Pharm. Sec. Lit.*, 1995 U.S. Dist. LEXIS 5717 (E.D. Pa. 1995) .................................................................................................................. 13

*In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002 (N.D. Ill. 2001) ................. 9

*In re Prudential Ins. Co. America Sales Litig.*, 148 F.3d 283 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999) .................................................................. 14

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005) ............................. 13, 14

*In re S. Ohio Corr. Facility*, 175 F.R.D. 270 (S.D. Ohio 1997) ................................... 19

*In re SmithKline Beecham Corp. Sec. Litig.*, 751 F. Supp. 525 (E.D. Pa. 1990) .................................................................................................................. 10

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ........................ 7

*In re: Pet Food Products Liability Litig.*, 629 F.3d 333 (3d Cir. 2010) ........................ 8

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) ............................................................ 7

*Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, 639 Fed. Appx. 880 (3d Cir. 2016) ............................................................................................................. 15

*Maher v. Zapata Corp.*, 714 F. 2d 436 (5th Cir. 1983) ............................................. 5

*Malchman v. Davis*, 761 F.2d 893 (2d Cir. 1985) ................................................... 17

*Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. Feb. 2, 2001) ...................... 10

*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007) ................. 15

*Meijer, Inc. v. 3M*, 2006 U.S. Dist. LEXIS 56744 (E.D. Pa. August 15, 2006) .......... 19

*Pennwalt Corp. v. Plough*, 676 F.2d 77 (3d Cir. 1982) ............................................. 8

*Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615 (3d Cir. 2020) .......... 11

*Sala v. Nat'l R.R. Passenger Corp.*, 128 F.R.D. 210 (E.D. Pa. 1989) ....................... 13

*Schlensky v. Dorsey*, 574 F.2d 131 (3d Cir. 1978) .................................................. 10

*Scoma Chiropractic, P.A. v. Nat'l Spine and Pain Centers, LLC*, 2022 WL 16695130 (M.D. Fl. Nov. 3, 2022) ....................................................................... 11

*Stanspec Corp. v. Jelco, Inc.*, 464 F.2d 1184 (10th Cir. 1972) .................................. 7

*Taubenfeld v. Aon Corp.*, 415 F.3d 597 (7th Cir. 2005) .......................................... 13

*US Airways, Inc. v. McCutchen*, 133 S.Ct. 1537 (2013) ......................................... 15

*Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F. 2d 956 (3d Cir. 1983) ................... 5

*Whitford v. First Nationwide Bank*, 147 F.R.D. 135 (W.D. Ky. 1992) ...................... 10

**Statutes**

28 U.S.C. § 1711 ...................................................................................................... 2

**Rules**

Fed. R. Civ. P. 23(b)(3) ............................................................................................. 3

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................ 6

Fed. R. Civ. P. 23(e)(2) ............................................................................................. 8

**Treatises**

4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 14:6, p.
570 (4th ed. 2002) .................................................................................................. 15

7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6
(3d ed. 2005) ............................................................................................................ 5

ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 13:80
(4th ed. Updated June 2008) ................................................................................. 14

MANUAL FOR COMPLEX LITIGATION, THIRD, § 30.42 (1995) ........................... 7

3

## BRIEF IN SUPPORT

Plaintiff, Advantage Medical Associates, P.A. ("Plaintiff"), on behalf of itself and a class of similarly-situated persons (the "Settlement Class"), respectfully requests that the Court enter an Order granting final approval to the Settlement Agreement with defendant Paragon Private Health, LLC ("Defendant") (the "Settlement" or "Agreement"). On September 11, 2025, the Court entered an *Order Preliminarily Approving Class Action Settlement* (Doc. 49) ("Preliminary Approval Order"). The Parties' proposed Final Approval Order is attached hereto as <u>Exhibit A</u>.

## I.    Background.

In January 2020, Defendant caused one-page solicitations to be sent by fax transmission to Plaintiff and thousands of other healthcare providers (the "Faxes"). Plaintiff's Class Action Complaint alleged that Defendant violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), by sending the Faxes. The fax at issue appears at Doc. 1, PageID: 23.

The Faxes sought qualified physicians interested in joining or participating in Defendant's concierge medicine program. During discovery, Plaintiff determined that the Faxes were sent to 43,586 different fax numbers during the period January 24, 2020 (the earliest date within the four-year limitations period), to January 27, 2020. Defendant did not send faxes thereafter.

The Parties engaged in arm's-length settlement negotiations. After considering the claims and defenses, as well as Defendant's limited ability to pay, Plaintiff agreed to the terms of a proposed settlement under which Defendant would pay $775,000 to settle the claims about the Faxes. The Parties drafted and agreed to a written

settlement agreement, a proposed notice to the absent class members, and drafted proposed preliminary and final orders. (Doc. 48-2).

The Court preliminarily approved the proposed settlement on September 11, 2025, after considering Plaintiff's *Motion to Approve Class Action Settlement* and brief in support. (Doc. 48). The Court entered an *Order Preliminarily Approving Class Action Settlement* (Doc. 49) ("Preliminary Approval Order"). In accordance with the Preliminary Approval Order, Class-Settlement.com, the appointed Settlement Administrator (the "Settlement Administrator"), sent the class notice by fax to the fax numbers that received the Faxes in 2020. Declaration of Dorothy Sue Merryman, Exhibit B. For any fax number that did not receive the notice, the Settlement Administrator mailed the class notice to the mailing address corresponding to that number in Defendant's records. *Id*.

No class member has objected to the settlement. *Id*. at ¶ 14. Just four class members opted-out or requested exclusion from the Settlement Class and this case. *Id*. In short, the class members support final approval.

In addition, the Settlement Administrator sent notice to the attorneys general of all 50 states (plus Washington, D.C.), and the United States Attorney General, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1711 *et seq. Id.*, ¶ 5. No one has objected to the settlement.

## II. Summary of the Settlement.

The key terms of the Settlement are as follows:

2

(a)    <u>Class Certification</u>. Pursuant to Rule 23(b)(3), by stipulation of the Parties, and solely for the purpose of settlement, the Court preliminarily certified the following settlement class:

> All persons and entities sent one or more facsimiles between January 24, 2020, and January 27, 2020, offering a $100 honorarium for participation in a consultation call with Paragon.

Preliminary Approval Order at 2. The Settlement Class excludes: (1) Defendant, former defendant Signature MD, Inc. ("Signature"), any parent, subsidiary, affiliate, or controlled person of Defendant or Signature, as well as their attorneys, officers, directors, agents, servants, or employees, and the immediate family members of such persons; (2) the named counsel in the Action and employees of their offices or firms; and (3) the judge(s) assigned to the Action and his or her staff. *Id*.

The Court appointed Plaintiff as the "Settlement Class Representative" and appointed Plaintiff's attorneys, Phillip A. Bock of Bock Hatch & Oppenheim, LLC, as "Settlement Class Counsel." *Id*., ¶ 4. Giordano, Halleran & Ciesla, P.C. are "Liaison Counsel."

(b)    <u>The Settlement Fund</u>. Defendant has agreed to pay $775,000 (the "Settlement Fund"), which will be used to pay class member claims, to pay an incentive payment to the Settlement Class Representative, and to pay attorneys' fees and expenses to Settlement Class Counsel. The entire Settlement Fund will be paid out, so no portion will revert to Defendant. (Doc. 48-2, ¶¶ 6, 14, 16).

#11894350v1

(c)    <u>Monetary Relief to the Settlement Class</u>. Each class member (including Plaintiff) who submits an approved claim form will be mailed a check on a pro rata basis *pro rata* basis for each of their fax numbers on the Class Notice List. *Id.*, ¶ 14. The claimant need not possess any copies of faxes received, need not remember receiving any fax, and need not know anything about Defendant. Rather, the claimant must merely identify himself/herself/itself as a member of the Settlement Class; *i.e.*, as the owner or user of one or more targeted fax numbers during the Class Period. *Id.* and Exhibit 2 thereto.

(d)    <u>Class Notice</u>. Pursuant to the terms of the Preliminary Approval Order, the Settlement Administrator sent the approved Class Notice by fax or, to those whose fax number failed, by mail. <u>Exhibit B</u>, ¶¶ 4-10. The Settlement Administrator also established a secure website, www.class-settlement.com, where class members could submit claims using a unique Username and Password printed on the Notice they received via fax or mail.  *Id.*at ¶ 11. In addition, they could view copies of the Class Notice and Claim Form, Preliminary Approval Order, Settlement Agreement, and Class Action Complaint. *Id.*

(e)    <u>Class Members' Right to Opt-Out or Object</u>. Class members were notified about their right to object to the settlement or exclude themselves from it by November 24, 2025. *Id*, Ex. 1 thereto. No class member objected and only four opted out. *Id.*, ¶ 13.

4

(f)    <u>Settlement Class Representative Incentive Award and Attorney's Fees and Expenses</u>. As agreed by Defendant, Settlement Class Counsel requests that the Court award $15,000 to Plaintiff for serving as the Settlement Class Representative. Furthermore, as agreed by Defendant, Settlement Class Counsel requests that the Court award them one-third of the Settlement Fund as attorney's fees ($258,333.33), plus out-of-pocket expenses from the Settlement Fund (totaling $6,639 and detailed in the ledger submitted at Doc 48.4, PageID: 382-383).

(g)    <u>Releases</u>. If the Court finally approves the proposed settlement after notice, the Settlement Class will release all claims about the Faxes (described in the class definition). (Doc. 48-2, ¶ 3).

## III.    The Settlement Class was notified about the settlement proposal.

Rule 23 (e)(1) requires, "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Under federal law, notice of the settlement must satisfy due process. *Maher v. Zapata Corp.*, 714 F. 2d 436, 450-453 (5th Cir. 1983); *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F. 2d 956, 963 (3d Cir. 1983). The Court is vested with wide discretion both as to the way notice is given and the form that notice is to take. 7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2005). Here, in compliance with the Court's Preliminary Approval Order (Doc. 49), the Settlement Administrator caused the class notice to be sent to the class members by facsimile or, for those class members whose fax number did not receive the notice, by U.S. mail. <u>Exhibit B</u>, ¶¶ 4-10.

5

The content of the Parties' notice complied with Rule 23(c)(2)(B), which requires that the notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23 (c) (3)." The class notice stated all those things. <u>Exhibit B</u>, Ex. 1.

Further, the claim form for the settlement was a 1-page, easy to read and understand form. *Id*. The Settlement Class members did not have to provide a copy of a received junk fax or remember receiving any. Instead, to claim a monetary payment they merely needed to identify themselves as members of the class by affirming their ownership or use of one or more of the subject fax numbers at the time of the faxing.

## IV.    The Court Should Finally Approve the Settlement.

### A.    Class Certification is Still Appropriate.

In preliminarily approving the settlement, this Court ruled that class certification is appropriate. (Doc. 49 at ¶ 2). The Settlement Class Members were alerted that this Court certified a class for settlement purposes, and there has been no objection. <u>Exhibit B.</u> As a result, class certification is still appropriate in that (a) the class is so numerous that joinder of all members is impracticable; (b) there are questions of law and fact common to the class that predominate over any questions affecting only individual class members; (c) Plaintiff's claims are typical of the claims

6

of the class; (d) Plaintiff and its attorneys will fairly and adequately protect the interests of the class; and (e) a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

### B.    Standard for Judicial Evaluation and Approval.

A court should approve a settlement if the settlement "is fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e) (1) (C). *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 592-93 (3d Cir. 2010). "[A] district court's primary role is to determine whether the settlement is fundamentally fair, reasonable and adequate." *Id. citing In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004).

It is well-established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."). "[A] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." MANUAL FOR COMPLEX LITIGATION, THIRD, § 30.42 (1995). *See also Stanspec Corp. v. Jelco, Inc.*, 464 F.2d 1184, 1187 (10th Cir. 1972) ("The law actively encourages compromise and settlement of disputes.")

A district court should not "modify the terms of a voluntary settlement agreement between parties." *Id. citing Evans v. Jeff D.*, 475 U.S. 717, 726-27 (1986). There is a "strong presumption in favor of voluntary settlement agreements" which the Third Circuit has "explicitly recognized with approval." *Id.* at 594, *citing Pennwalt*

7

*Corp. v. Plough*, 676 F.2d 77, 79-80 (3d Cir. 1982). This policy is "especially strong" in class actions. *Id.* at 595.

### C.    The Settlement is Fair, Reasonable, and Adequate.

The Third Circuit has articulated nine factors to be considered when determining the fairness of a proposed class settlement: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risk of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the Defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *In re: Pet Food Products Liability Litig.*, 629 F.3d 333, 350 (3d Cir. 2010), *citing Girsh v. Jepson*, 521 F.2d 153, 157 (3rd Cir. 1975). Here, each of these factors supports final approval of the settlement.

Rule 23(e)(2) enumerates similar factors: (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule

8

23(e)(3); and (D) the proposal treats class members equitably relative to each other. Here, all these factors also show the settlement should be approved.

### 1.    Complexity, expense, and duration of the litigation.

Class actions have a well-deserved reputation for complexity. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 315 (N.D. Ga. 1993) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). This case is no exception. Litigating to a final judgment and, if successful, distributing funds to class members would be a risky, lengthy, and time-consuming endeavor. The settlement avoids the risks and delays by offering money now. The settlement offers a significant monetary payment in a case where there are unresolved merits and class certification issues in addition to Defendant's inability to pay and Plaintiff's corresponding inability to collect.

The settlement avoids the uncertainty, length of time, and additional costs associated with continuing this hard-fought litigation, by offering relief to the class members by returning a simple claim form identifying themselves as members of the class entitled to claim a monetary share of the Settlement Fund. Resolution of the case will allow the Settlement Class to receive significant monetary payments and avoid the uncertainty of pursuing recovery from Defendant through subsequent litigation. The Court should finally approve the settlement because it will minimize the inevitable costs of future litigation.

### 2.    Class member reaction to the settlement proposal.

No class member has objected to the settlement and only four opted out. Exhibit B at ¶ 14. A low rate of opt-outs or opposition reflect favorably on a settlement. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020-21 (N.D.

Ill. 2001) (high acceptance rate "is strong circumstantial evidence in favor of the settlements"). Thus, the class members overwhelmingly support the settlement. *See Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. Feb. 2, 2001) (low opt-out and objection statistic showed that approximately 99.99% of the class elected to take part in the settlement); *Schlensky v. Dorsey*, 574 F.2d 131, 148 (3d Cir. 1978); *In re SmithKline Beecham Corp. Sec. Litig.*, 751 F. Supp. 525, 530 (E.D. Pa. 1990); *Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F. Supp. 1130, 1169 (N.D. Ill. 1997) (settlement fair where only a small number of class members objected); *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 163, 175 (S.D.N.Y. 2000) (a small number of objectors is "indicative of the adequacy of the settlement"); *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 141 (W.D. Ky. 1992) ("small number of objectors is a good indication of the fairness of the settlement"). The lack of any opposition shows a favorable reaction that supports final approval.

### 3.    The stage of the case and amount of discovery.

The stage of proceedings and amount of discovery supports final approval. The Parties engaged in sufficient discovery, including third party discovery from the fax broadcaster, and settlement discovery of Defendant's ability to pay, to allow them to make a fully informed decision prior to agreeing to the settlement terms. The members of the class have been notified. Therefore, the stage of proceedings and amount of discovery supports final approval.

10

      **4.    The risks of establishing liability, damages, and maintaining a class through trial.**

As noted above, there are unresolved merits and class certification issues in addition to the economic realities. Some federal courts have held that individual issues of consent predominate in TCPA cases. *See, e.g., Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615 (3d Cir. 2020); *Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*, 29 F.4th 839 (7th Cir. 2022); *Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1101 (11th Cir. 2019); *Gene & Gene LLC v. Biopay LLC*, 541 F.3d 318 (5th Cir. 2008).

Others have held that defendants are not liable for any faxes received through an online fax service. *See, e.g., Career Counseling, Inc. v. Amerifactors Fin. Grp., LLC*, 91 F.4th 202 (4th Cir. 2024); *Astro Cos., LLC v. WestFax Inc.*, 2025 WL 474931, at *4 (D. Col. Feb. 12, 2025); *Scoma Chiropractic, P.A. v. Nat'l Spine and Pain Centers*, LLC, 2022 WL 16695130, at *8-9 (M.D. Fl. Nov. 3, 2022).

Even if Plaintiff and the class won all issues and disputes, a court might ultimately decide the statutory damages must be reduced. For example, in *Golan v. FreeEats.com*, 930 F.3d 950 (8th Cir. 2019), the Eighth Circuit affirmed a reduction of a large TCPA statutory damages award on due process grounds.

The Settlement avoids the risks and delay of further litigation by offering class members the opportunity to claim a share of the Settlement Fund merely by confirming that they were the owner/holder/user of one or more fax numbers sent the Faxes in 2020, without having to remember receiving one. Further, the Settlement provides participating class members with the best relief for a TCPA violation they

11

could hope to recover from this Defendant. While the TCPA allows for a recovery of $500 per violation, Defendant produced confidential financial information showing it cannot pay such a sum—or anything close to it—even if found liable. Each Settlement Class Member who submits a claim will receive a pro rata share of the Settlement Fund. Doc. 48-2 at PageID 333 (Agreement, ¶ 14).

### 5.    Defendant's ability to withstand a greater judgment.

Defendant faces liability of 21,793,000 ($500 x 43,586 faxes sent), but produced financial information demonstrating that it could not pay such a sum—or anything close to it—if found liable. Indeed, given that Defendant is now functionally defunct, there was a real risk that *any* litigation outcome would lead to its bankruptcy. This factor weighs in favor of compromise.

### 6.    Range of reasonableness of the settlement.

When looking to the range of reasonableness of the settlement considering the best possible recovery and the attendant risks of litigation, the Settlement is undoubtedly fair, reasonable and adequate. As mentioned above, the Settlement provides substantial cash relief to the Settlement Class in a case where there are defenses to liability and a likely bankrupt Defendant should liability be established. When looking to the range "of the best possible recovery," this Settlement is an excellent result. When looking at the "attendant risks of litigation," this Settlement is an excellent result. It should be approved.

## V.    The Attorney's Fees and Expenses are Reasonable and Appropriate.

Defendant has agreed to pay one third of the Settlement Fund ($258,333.33) to Settlement Class Counsel as attorney's fees, plus out-of-pocket expenses ($6,639).

#11894350v1

The settlement notice informed the class members about the Parties' agreement on fees and expenses, and no class member complained or objected. Exhibit B.

The Court should consider the following factors: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; and (6) the amount of time devoted to the case by plaintiff's counsel; and the awards in similar cases. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005). Here, all six factors show that the requested fees are reasonable.

Attorney fees equal to one-third of the benefit made available to the class is common in class actions. *Grier v. Chase Manhattan Automotive Finance Co.*, 2000 U.S. Dist. LEXIS 1339 (E.D. Pa. 2000) (awarding fees of 33 1/3 % of settlement fund, noting that because common fund is relatively small, it is appropriate to award a higher percentage than in cases resulting in substantially larger funds); *In Re Greenwich Pharm. Sec. Lit.*, 1995 U.S. Dist. LEXIS 5717 (E.D. Pa. 1995) (on settlement of $4.375 million, court approves fee of 33% as appropriate, noting in this "much smaller case," a fee award of 33% does not present the danger of providing plaintiff's counsel with the windfall that would accompany a 'megafund' of, for example, $100 million.); *Sala v. Nat'l R.R. Passenger Corp.*, 128 F.R.D. 210 (E.D. Pa. 1989) (On settlement of $179 million, court awards 33% fee on first million and 30% on the remainder); *Taubenfeld v. Aon Corp.*, 415 F.3d 597 (7th Cir. 2005) (approving award of fees equal to 30% of $7.25 million settlement plus $111,054.06 in expenses

13

and citing with approval a submission showing thirteen cases in the Northern District with awards of 30-39% of common funds in class actions); *Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998) (awarding 38% of the fund as fees). *See also* ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 13:80 (4th ed. Updated June 2008).

The Third Circuit has explained, "The percentage-of-recovery method is generally favored in common fund cases because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) (quoting *In re Prudential Ins. Co. America Sales Litig.*, 148 F.3d 283 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999)). Courts have long recognized that the attorneys' contingent risk is an important factor in determining the fee award. *See Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994); *Gaskill*, 160 F.3d at 363.

It is well-settled that the attorneys who create a benefit for class members are entitled to compensation for their services. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). "When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund." *Gaskill*, 160 F.3d at 363 (7th Cir. 1998) (affirming award of 38% of $20 million), and citing *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

The U.S. Supreme Court has noted that in settlement fund cases, such as this one, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). In *Boeing,* 444 U.S. at 480, the

14

Supreme Court stated that the right of absentee class members "to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel." *See also US Airways, Inc. v. McCutchen*, 133 S.Ct. 1537, 1545 (2013) (discussing *Boeing* rule and describing it as one "designed to prevent freeloading").

"[T]he criteria are satisfied when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump–sum judgment recovered on his behalf." *Boeing*, 444 U.S. at 479. *See Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, 639 Fed. Appx. 880, 883-84 (3d Cir. 2016).

The fee award is based upon the entire fund available to be claimed, even when the entire fund is not claimed by class members and the unclaimed remainder reverts to the defendant. *Id. See Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) ("The entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not.") *See also* 4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 14:6, p. 570 (4th ed. 2002) (stating that *Boeing* settled the issue of whether the benchmark common fund amount for fee award purposes is made up of the amount claimed by class members or the amount potentially available to class members by ruling that class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed).

15

Here, as in *Boeing*, the class members were sent a class notice and claim form that enabled them "to share the harvest of the lawsuit upon proof of their identity." By identifying themself as an owner or user of one or more of the targeted fax numbers when the faxes were sent in 2017, they would receive a check for $200, without any need to prove up their claim, and without needing to possess or remember receiving any fax from Defendant.

Settlement Class Counsel's request for one third of the Settlement Fund is consistent with the market rate for class action settlements of TCPA "junk fax" claims. *See, e.g., City Select Auto Sales, Inc. v. BMW Bank of North America, Inc.*, Case No. 13-cv-4595 (D. N.J. Jan. 7, 2020) (Doc. 171) (awarding one third of fund); *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, No. 18-cv-1902 (E.D. Pa. Apr. 21, 2022) (Doc. 85) (same); *Robert W. Mauthe, M.D., P.C. v. ITG, Inc.*, No. 18-cv-1968 (E.D. Pa. Dec. 21, 2021) (Doc. 138) (same); *Steven A. Conner DPM, P.C. v. Optum360, LLC*, Case No. 17-cv-1642 (E.D. Pa. Nov. 25, 2019) (same); *Hawk Valley, Inc. v. Taylor*, Case No. 10-cv-804 (E.D. Pa. Aug. 6, 2015) (Doc. 193) (same); *Community Vocational Schools of Pittsburgh, Inc. v. Mildon Bus Lines, Inc.*, Case No. 09-cv-1572 (W.D. Pa. Oct. 9, 2019) (Doc. 149) (same); *Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC*, Case No. 11 CV 11, 2015 WL 12866997 (D. N.J. Jan. 26, 2015) (same); *Avio, Inc. v. Alfoccino, Inc.*, No. 10-cv-10221 (E.D. Mich. Jan. 18, 2018) (Doc. 180) (awarding one-third of settlement fund as fees to class counsel); *Imhoff Investment, LLC v. Sammichaels, Inc.*, No. 10-cv-10996 (E.D. Mich. Nov. 2, 2016) (Doc. 120) (same); *Jackson's Five Star Catering, Inc. v. Beason*, No. 10-cv-10010 (E.D. Mich. Apr. 15,

16

2015) (Doc. 90) (same); *Avio Inc. v. Creative Office Solutions, Inc.*, 10-cv-10622 (E.D. Mich. Dec. 10, 2012) (Doc. 31) (same); *American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, No. 09-cv-1162 (W.D. Mich. Mar. 1, 2016) (Doc. 278) (same); *Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*, No. 12-cv-2257 (N.D. Ohio Feb. 9, 2016) (Doc. 73) (same); *Van Sweden, Inc. v. 101 VT, Inc.*, No. 10-cv-253 (W.D. Mich. July 30, 2015) (Doc. 245) (same); *Sandusky Wellness Ctr., LLC v. Heel, Inc.*, 12-cv-1470 (N.D. Ohio Apr. 25, 2014) (Doc. 95) (same).

The class notice informed the Settlement Class about the attorney's fees and expenses. Nobody objected. Courts recognize the lack of objection from the class as an important factor in awarding fees. *See, e.g., In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2008 WL 63269, *4 (E.D. Pa. Jan. 3, 2008) ("A lack of objections demonstrate that the Class views the settlement as a success and finds the request for counsel fees to be reasonable.").

In *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), the U.S. Supreme Court held that negotiated, agreed-upon attorneys' fee provisions, such as the one here, are the "ideal" towards which the parties should strive: "A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." In *Malchman v. Davis*, 761 F.2d 893 (2d Cir. 1985), the court concluded that courts should not interfere in fee arrangements between settling class action parties when the defendant has agreed to pay the fees:

> [W]here ... the amount of the fees is important to the party paying them, as well as the attorney recipient, its seems to the author of this opinion that an agreement 'not to oppose' an application for fees up to a point is essential to completion of the settlement, because the Defendant want

17

to know their total maximum exposure and the plaintiffs do not want to be sandbagged. It is difficult to see how this could be left entirely to the courts for determination after the settlement. [761 F.2d at 905 n. 5].

Here, Settlement Class Counsel undertook the case on a contingency basis and achieved an excellent result. Settlement Class Counsel have been litigating TCPA class actions since 2003 and have litigated other types of class actions for many more years. Doc. 48-3 (firm resume and attorney biographies). In this case, they were able to apply their unique capabilities to achieve an excellent result in a fair and efficient manner. They always faced risk of nonpayment, not only for their time but also for their out-of-pocket costs. The Court should approve Defendant's agreement to pay Settlement Class Counsel the agreed fees of $258,333.33—one third of the Settlement Fund—because that amount is within the market rate for this type of case and it is otherwise fair and reasonable under the circumstances. Settlement Class Counsel will share the fee award with Liaison Counsel pursuant to their agreement.

Further, Settlement Class Counsel seek reimbursement of $6,639 in out-of-pocket expenses reasonably incurred in this action, as detailed in the ledger previously submitted at Doc 48.4, PageID: 382-383.

## VI.    The Agreed Service/Incentive Award to Plaintiff is Appropriate.

Finally, the Court should approve Defendant's agreement to pay $15,000 to Plaintiff as a service or incentive award for serving as the Settlement Class Representative. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000) (quoting *In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 272 (S.D. Ohio

18

1997)). *See also Meijer, Inc. v. 3M,* 2006 U.S. Dist. LEXIS 56744 at \*82-83 (E.D. Pa. August 15, 2006); *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 incentive award to class representative because "a named plaintiff is an essential ingredient of any class action, [and] an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 367 (S.D. Ohio 1990) (approving two incentive awards of $55,000 and three of $35,000 to five representatives).

Here, the Parties agreed an award similar to that awarded in other TCPA cases. *See, e.g., ITG* ($15,000); *Hawk Valley 13-50* (same); *River Road* (same); *Imhoff Investment* (same); *Wagner Wellness* (same); *Jackson's Five Star* (same); *Heel* (same).

Class action suits conserve judicial and litigant resources. Class representatives assume the burdens of litigation that absent class members do not shoulder and do so without promise of a reward and with the risk that the litigation may not succeed. A plaintiff willing and able to represent the entire class and devote time and attention to the case is crucial for a class action to proceed and for the class to receive anything.

Here, Plaintiff was the catalyst for bringing the action. Plaintiff's efforts benefited the Settlement Class. But for Plaintiff's initiative and participation, and willingness to subject itself to public scrutiny in attempting to enforce the TCPA, the benefits made available to all class members would not have been possible. The Court should approve the Parties' agreement regarding Plaintiff's incentive payment, and award the requested amount.

## VII.    Conclusion.

WHEREFORE, Plaintiff, Advantage Medical Associates, P.A., respectfully requests that the Court approve the Parties' Settlement Agreement and enter the proposed *Final Approval Order*, which was attached as Exhibit 3 to the Settlement Agreement and is submitted herewith as <u>Exhibit A</u>.

ADVANTAGE MEDICAL ASSOCIATES, P.A., individually and as the representative of a class of similarly-situated persons,

By:      <u>s/ Michael J. Canning</u>
        One of their attorneys

Michael J. Canning
Matthew N. Fiorovanti
GIORDANO, HALLERAN & CIESLA, P.C.
125 Half Mile Road, Suite 300
Red Bank, New Jersey 07701-6777
Tel: (732) 741-3900
MCanning@ghclaw.com
MFiorovanti@ghclaw.com

Phillip A. Bock (pro hac vice)
David M. Oppenheim (pro hac vice)
Bock Hatch & Oppenheim, LLC
203 N. La Salle St., Ste. 2100
Chicago, IL 60601
Tel: (312) 658-5501
Email: service@classlawyers.com

## CERTIFICATE OF E-FILING AND SERVICE

The undersigned attorney hereby certifies that, on December 9, 2025, the foregoing was filed using the Court's CM/ECF System, which will send notification of such filing to all counsel of record.

s/ Michael J. Canning

21